# The Western Underwriters Association v. William N. Hankins.

1. PROOFS OF LOSS—*when presentation of, within time specified in
policy, waived.* Where it appears by the negotiations between the par-
ties after the loss that no dispute existed between them with respect to
the liability, except as to the amount, the presentation of proofs of loss
within the time provided by the policy is waived.

2. ARBITRATION—*when insured not responsible for failure to obtain.*
Where pursuant to the provisions of the policy the insured appointed
an appraiser and made repeated efforts to agree with the appraiser
designated by the company upon an umpire, he cannot be held to
have been responsible for the failure to secure an appraisement where
an umpire agreed upon has refused to act, stating his incompetency,
and then upon the personal solicitation of the appointee of the com-
pany agreed to act. Under such circumstances the insured is justified

in refusing to proceed with the appraisement with such person acting as umpire.

3. VERDICT—*when not disturbed as excessive.* Notwithstanding a verdict may appear large, yet the Appellate Court will not set aside the same as excessive where it does not appear to have been the result of passion, prejudice or mistake.

Action of assumpsit. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1904. Affirmed. Opinion filed October 9, 1905.

HENRY RUSSELL PLATT and J. T. GARRETSON, for appellant.

ROBERT H. PATTON and B. GALLIGAN, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an action in assumpsit by appellee against appellant upon a policy of insurance for $2,000 covering loss or damage by fire. There was a verdict against appellant for $2,000 from which appellee remitted $666.67, and the court, after overruling appellant's motion for a new trial, entered judgment against it for $1,333.33 damages and costs of suit.

The provisions of the policy sued on, and particularly involved in this controversy, are substantially, as follows : That the company should not be liable beyond the actual cash value of the property at the time of the loss; that the loss should be determined by the insured and the company, with proper deductions for depreciation, or if they differed, by appraisers, and the amount of such loss having been thus determined, the sum for which the company was liable should be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of loss had been received by the company in accordance with the terms of the policy; that if fire occurred, the insured should, within sixty days after the fire, unless such time was extended in writing by the company, render a statement to the company, signed and sworn to by the insured, stating his knowledge and belief as to the time and origin of the fire; the interest of the insured and all others in the property;

the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance covering any of said property, and a copy of all the descriptions and schedules in all the policies; any changes in the title, use, occupation, location, possession or exposure of the property since the issuing of the poli·y, together with other information; that in the event of disagreement as to the amount of loss, the same should be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one, and that the two so chosen should first select a competent and disinterested umpire; that the appraisers together should then determine and appraise the loss, and, failing to agree, should submit their differences to the umpire, and that the award in writing of any two should be *prima facie* evidence of the amount of the loss; that the company should not be held to have waived any condition or provision of the policy or any forfeiture thereof, by any requirement, act or proceeding on its part relating to the appraisal or to any examination provided for in the policy, and that the loss should not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss required therein had been received by the company, including an award by appraisers when appraisal had been required; that the company should not be liable for any loss on the property greater than the proportion which the amount thereby insured should bear to the whole insurance covering the property; that no suit or action on the policy for the recovery of any claim, should be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements.

June 23, 1903, a building belonging to appellee, in the city of Springfield, and upon which appellee had two policies of insurance, one in appellant for $2,000, and one in the Anchor Fire Insurance Company for $1,000, was damaged by fire. In response to a notice of the loss by the local agent cf appellant, it sent its adjuster, S. E. Lowe, to Springfield to settle the same. Lowe examined the prem-

ises and offered appellee $650, being two-thirds of his estimate of the total loss, in full settlement on behalf of appellant. Upon appellee's refusal to accept said sum, Lowe notified appellee, that under the terms of the policy appellant demanded that the loss be submitted to appraisers for determination, and named S. R. White as appraiser for appellant. After some further negotiations, appellee selected M. R. Mulvihill as his appraiser, and thereupon White and Mulvihill selected Fred Gehlman as umpire.

The appraisers, White and Mulvihill, failing to agree as to the amount of the loss, notified Gehlman of his selection as umpire. Gehlman, who had previously been notified by the local agent of appellant that he would probably be selected as umpire, when notified by White and Mulvihill, said he would rather not have anything to do with it; that he had figured on a loss on a former occasion and his experience had been unsatisfactory and that he would not serve. Mulvihill testifies that Gehlman said at that time, he did not think he was competent, that an older man or one with more experience should be selected as umpire. Gehlman testifies that on the day before White and Mulvihill called upon him to notify him of his selection as umpire, Mulvihill called him up over the telephone and told him that White and himself (Mulvihill) would be around the next day for him (Gehlman) to act as umpire on the fire loss; that he (Mulvihill) did not want him to go on at all, and that he (Gehlman) had better tell them he would not go on. This telephone conversation is denied by Mulvihill. Upon the refusal of Gehlman to serve as umpire, Mulvihill suggested to White the names of other persons he considered competent to act, but White said that Gehlman was competent and would finally act; that he (White) would insist upon Gehlman acting. Mulvihill then said he did not want Gehlman, as the latter had refused to act and had said he was not competent. Thereafter, White called on Gehlman privately and obtained his consent to act as umpire. Appellee and Mulvihill persisted in their determination not to consent to the selection of Gehlman, and made

further efforts without success to secure White's consent to the selection of some other competent, disinterested person to act as umpire. Upon Mulvihill's refusal to act with Gehlman, White and Gehlman formulated an award or appraisal of the loss at $1,165.95, and the same was forwarded to appellee by mail accompanied by notice from appellant's adjuster, Lowe, that upon execution by appellee of proofs of loss in accordance with said award, the same would be paid. Appellee refused to execute the proofs of loss in form as requested, and brought this suit upon the policy to recover the amount of damage sustained.

It is contended by appellant that there is no proof in the record of a waiver by it of the provision in the policy requiring appellee to furnish to appellant within sixty days after the fire, proofs of loss accompanied by the award of the appraisers; and that the furnishing of such proofs of loss by appellee is a condition precedent to his right of recovery under the policy. Based upon such contention, appellant at the close of appellee's evidence and again at the close of all the evidence requested the court to give to the jury peremptory instructions. The instructions were properly refused. Upon his inspection of the property appellant's adjuster, Lowe, offered to pay appellee $650 in settlement of the loss. So far as the record shows, no condition was attached to the acceptance by appellee of such offer. The origin of the fire, the interest of appellee in the property and other matters, except the amount of the loss, necessary and proper to appear in formal proof of loss, were not in dispute. There is no force in appellant's contention that no waiver can be inferred, because it subsequently specifically informed appellee that proofs of loss were necessary.

True, proofs of loss prepared by appellant were sent to appellee accompanied by the award of White and Gehlman as appraisers, but appellee was required to execute the same "in accordance with said award." The form of appellant's request for proofs of loss gave appellee, in effect, the alternative of executing those sent or none at all, and we think

justified the jury in finding that proofs of loss executed by appellee in any other form would avail him nothing.

Until the acceptance by Gehlman of his appointment as umpire, Mulvihill had the right for reasonable cause to with- draw his consent to the appointment. The unqualified re- fusal of Gehlman to act and his subsequent acceptance of the duty at the private solicitation and insistence of White, was, in our opinion, sufficient justification for the attitude later assumed by Mulvihill. The conduct of White was arbitrary, to say the least, and in view of Mulvihill's repeated efforts to select a competent and disinterested umpire in lieu of Gehlman, must be held responsible for the failure of an impartial appraisal.

Reading the instructions as a series, the seventh instruc- tion given at the instance of appellant cured the error, if any, complained of in the second given instruction offered by appellee.

The criticism upon the ruling of the trial court in ad- mitting in evidence a letter written by appellee to appel- lant is not justified. It was written after Mulvihill and ap- pellee had refused to recognize Gehlman as umpire, and for the purpose of securing an impartial appraisement by other appraisers. That appellee may have construed the policy as authorizing him to select appraisers upon the refusal of appellant to co-operate with him; could not have misled the jury. They were fully instructed by the court as to the relative rights and duties of the parties with reference to an appraisement under the terms of the policy.

Appellee was asked to state the reasons which induced him to refuse to execute the proofs of loss sent him by ap- pellant. The question was objected to as calling for the mental operation of the witness. In the abstract the question was subject to the objection made, but the answer of the witness could not have prejudiced appellant. It was, in substance, that there had not been such an appraise- ment as he conceived the policy provided for, and that he didn't think the amount the appellant offered to pay was enough. The reason which impelled appellee to refuse to

execute the proofs of loss referred to, was so patent upon his mere refusal, that the statement of his reason added nothing that could have improperly influenced the jury.

The evidence upon the question 'of the loss sustained by appellee is close and conflicting. It would serve no useful purpose to review it in detail.

A careful consideration of the evidence in the record compels us to say, we should have been better satisfied if the verdict of the jury had been for a less amount, but we cannot say it is so manifestly against the weight of the evidence as to justify a reversal of the judgment or the requiring of a *remittitur*.

The record does not disclose that the jury was actuated by passion or prejudice. This criticism by appellant is urged upon the ground that the verdict against it is for the full amount of the loss when it is liable, if at all, for only two-thirds of the total loss, and counsel argue that the loss must have been estimated by the jury at $3,000, or the jury must have utterly failed to understand or impartially consider the evidence. There is no evidence in the record to justify a finding that the loss sustained by appellee amounted to $3,000, and we are not disposed to conclude that the jury so far disregarded the evidence as to so find. On the other hand, there is evidence in the record to sustain a finding that the loss sustained by appellee amounted to $2,000. The jury were instructed by the court that appellant was only liable, in any event, for two-thirds of the total loss, but they were not specifically instructed, as they might have been at appellant's instance, that their verdict in the case, if against appellant, should be for two-thirds of the amount fixed by them as the total loss. The jury may have supposed, as we are disposed to think they did, that the duty of apportioning the loss between the two insurers properly devolved upon the court.

The *remittitur* required by the court and entered by appellee fully accomplished the duty of the jury.

The record being free from substantial error, the judgment is affirmed.

                                                    *Affirmed.*